IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHLEEN HOFFERICA          :          CIVIL ACTION
                            :
        v.                  :
                            :
ST. MARY MEDICAL CENTER     :          NO. 10-6026

MEMORANDUM

Dalzell, J.                              September 20, 2011

        Plaintiff Kathleen Hofferica ("Hofferica") brings suit

against defendant St. Mary Medical Center ("St. Mary"), asserting

claims under the Americans with Disabilities Act (the "ADA"), 42

U.S.C. § 12101, et seq.,; the Pennsylvania Human Relations Act

(the "PHRA"), 43 Pa. Stat. Ann. § 951, et seq.; and the Family

and Medical Leave Act (the "FMLA" or the "Act"), 29 U.S.C. §

2601, et seq.  Hofferica held a position as a nurse with St.

Mary, and in November of 2008 St. Mary allegedly terminated

Hofferica from this position after she took leave to undergo

treatment for Ménière's disease.  Hofferica's claims arise out of

those events.

        St. Mary filed a motion to dismiss Hofferica's

complaint in part pursuant to Fed. R. Civ. P. 12(b)(6), as to

which Hofferica filed a response in opposition, and St. Mary then

filed a reply in support.  St. Mary seeks the dismissal of

Hofferica's claims for interference and retaliation under the

FMLA -- Counts II and III of the complaint, respectively.  St.

Mary argues in its motion to dismiss that Hofferica's FMLA claims fail because she has not alleged that she was able to perform her job duties on the day her FMLA leave expired.  Hofferica responds that (1) St. Mary appears to conflate the interference and retaliation theories of recovery under the FMLA; (2) her interference claim stands because St. Mary failed to provide her with the requisite notice under the FMLA; and (3) St. Mary should be equitably estopped from asserting that it provided Hofferica with sufficient notice.  St. Mary replies that (1) it did provide Hofferica with the notice mandated by the FMLA; (2) in any case, Hofferica's interference claim and her equitable estoppel argument fail because she has not alleged that she was prejudiced by any lack of notice; and (3) Hofferica has not stated a plausible claim for retaliation.

In the end, we agree with St. Mary that Hofferica's failure to allege that she could return to her nursing position means that she has not stated a claim for FMLA interference based on defendant's refusal to reinstate her to that position.  We will consequently dismiss Hofferica's interference claim inasmuch as it is based on St. Mary's failure to reinstate her.

With respect to Hofferica's interference claim (based on St. Mary's alleged failure to provide individualized notice)

2

and her retaliation claim, we find ourself in an unusual position: St. Mary did not explain why we should dismiss these claims in its motion to dismiss, only asserting the insufficiency of these claims in its reply.  These arguments were prompted by Hofferica's own asseverations in her response, where she sought to explain why her notice interference and retaliation claims are sufficient.  This is thus different from a situation where a moving party raises an argument in support of its motion for the first time in its reply, and the opposing party has had no opportunity to address this argument by the time the Court rules on the motion.  In such a situation (which we see more commonly), we simply ignore the tardy argument.  See, e.g., United States v. Martin, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (Robreno, J.) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."); Bishop v. Sam's East, Inc., 2009 WL 1795316, at *5 (E.D. Pa. 2009) (Surrick, J.) (ruling that argument raised for the first time in reply had been waived).

Our own examination of the complaint and the applicable case law suggests, moreover, that Hofferica has not succeeded in stating a claim for FMLA interference based on lack of notice

(though we conclude that she <u>has</u> stated a claim for retaliation under the FMLA).  Nonetheless, we find that Hofferica may be prejudiced by her inability to respond specifically to the reasoning and caselaw that St. Mary raises in its reply.  We will thus consider the parties' arguments as to the sufficiency of Hofferica's notice interference and retaliation claims, explain why the law suggests that Hofferica has failed to state the former claim but succeeded in stating the latter claim, and give Hofferica leave to brief us on why the former claim should not be dismissed.

## I.   <u>Factual Background</u>

When we consider a motion to dismiss under Rule 12(b)(6), we must "'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.'" <u>Ordonez v. Yost</u>, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993)).  In the course of our inquiry, we may "'consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,'" <u>Brown v. Daniels</u>, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting <u>Lum v.</u>

Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)), where a document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis and internal quotation marks omitted). As our Court of Appeals has explained, this means that we may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). "What [this] rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent," In re Burlington Coat Factory, 114 F.3d at 1426, though of course the rule is also applicable to cases in which no fraud is alleged.

While Hofferica has attached no exhibits to her complaint, she does rely -- explicitly or implicitly -- on several documents. Because Hofferica refers to St. Mary's epistolary approval of her leave request in April of 2008, Pl.'s

Compl. ¶ 14, she has relied upon that letter.  See Ex. A to
Def.'s Mem. in Support of Mot. to Dismiss ("Def.'s Mem.").
Because Hofferica discusses her receipt of a letter from St. Mary
in November of 2008 terminating her employment , Pl.'s Compl. ¶
22, she has relied upon that November 7, 2008 letter St. Mary's
sent to her.  See Ex. C to Def.'s Mem.

St. Mary also seeks to introduce an undated "NOTICE TO
COLLEAGUES OF FAMILY MEDICAL LEAVE RIGHTS/OBLIGATIONS" that it
allegedly provided to Hofferica along with the April 22, 2008
letter, see Ex. H to  Def.'s Reply in Support of Mot. to Dismiss
("Def.'s Reply").  Since Hofferica has not had the opportunity to
respond to St. Mary's presentation of this document (and hence to
object to it), we cannot characterize the document as
"undisputedly authentic," Pension Benefit Guar. Corp., 998 F.2d
at 1196, and will therefore decline to consider it in ruling on
St. Mary's motion.  St. Mary also attaches a number of documents
to its reply that concern prior periods of leave that Hofferica
took from her position, Exs. A-G to Def.'s Reply, without even
attempting to explain why such documents "form the basis of a
claim" under Brown.  128 Fed. Appx. at 913 (quotation marks
omitted).  We will not consider those documents, either.

Finally, St. Mary has attached to its motion an October 8, 2008 letter in which St. Mary informed Hofferica of the number of hours remaining in her intermittent leave of absence balance, Ex. B to Def.'s Mem., suggesting that Hofferica relied on this letter in her complaint because she referred to the November 7, 2008 letter, which in turn referenced the October 8, 2008 letter. Def.'s Mem. at 4 n.2. We reject this suggestion, having found no authority that suggests that a court, in ruling on a motion to dismiss, should consider any document referred to in any other admissible document. Such a rule would take us far afield from the rationale identified in In re Burlington Coat Factory, i.e., ensuring that plaintiffs do not misrepresent documents to which they refer in their complaints. 114 F.3d at 1426.

Hofferica alleges that she is a forty-two-year-old citizen of the Commonwealth of Pennsylvania, Pl.'s Compl. ¶ 6, and that St. Mary is a non-profit Pennsylvania corporation. Id. ¶ 7. She notes that all conditions precedent to the institution of this suit have been fulfilled and that she has satisfied all jurisdictional prerequisites to the maintenance of this action. In particular, she explains that on November 4, 2010, the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue. Id. ¶ 5.

7

According to Hofferica, she was employed by St. Mary from June 5, 2006 until November 12, 2008.  Id. ¶ 11.  St. Mary initially hired Hofferica as a "Staff RN," and she maintained a satisfactory job performance rating in this position at all times.  Id. ¶ 12.  In March of 2008, however, Hofferica was diagnosed with Ménière's disease,[1] and in connection with this diagnosis she applied for intermittent leave from St. Mary in March of 2008 under the FMLA.  Id. ¶ 13-14.  Hofferica alleges that St. Mary's April 22, 2008 letter informed her that her leave request was "approved from February 5, 2008 through February 4, 2009."  Id. ¶ 14; see also Ex. A to Def.'s Mem.

Shortly after St. Mary approved Hofferica's leave request, Charles Kunkle, the emergency room director at St. Mary, allegedly told Hofferica that he questioned her ability to do her job because of her disability.  Pl.'s Compl. ¶ 15.  Hofferica asserts, however, that "[n]otwithstanding [her] disability, at all times relevant hereto she has been able to perform all job

---

[1] As The Sloane Dorland Annotated Medical-Legal Dictionary explains, "Ménière's disease" is characterized by "hearing loss, tinnitus, and vertigo resulting from nonsuppurative disease of the labyrinth with the histopathologic feature of endolymphatic hydrops (distention of the membranous labyrinth)."  Richard Sloane, The Sloane Dorland Annotated Medical-Legal Dictionary 214 (1987 ed.).

duties required by her position of employment." Id. Nonetheless, in September of 2008, Hofferica's physician informed her that she had to undergo a series of surgeries as treatment for her condition, leading her to commence leave pursuant to the approval St. Mary had granted in April of that year. Id. ¶ 17.

After Hofferica began her leave, she or her husband called Marie Magee, the assistant nurse manager at St. Mary, to provide updates each week on Hofferica's progress and the anticipated date on which she would return to work, though Hofferica alleges that Magee "often failed" to return these calls. Id. ¶ 18. In particular, Hofferica claims that she called Magee on November 4, 2008 to explain that her physician needed to approve her anticipated return-to-work date of November 6, 2008 and that her physician might postpone that date. Id. ¶ 19. Magee allegedly did not return her call. Id.

On November 5, 2008, Hofferica got a note from her physician that stated that she was medically cleared to return to work on November 13 of that year, and the next day Hofferica called to inform Magee of this clearance and request "a brief extension of her medical leave until said date as a reasonable accommodation for her disability." Id. ¶¶ 20-21. Hofferica states that Magee did not return her call. Id. ¶ 21. On

November 12, 2008, Hofferica allegedly received a November 7, 2008 letter from St. Mary that informed her that her position with St. Mary had been terminated because her medical leave of absence under the FMLA had expired.  Id. ¶ 22.

## II.  **Analysis**

The Supreme Court has explained that "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), leading a reviewing court to engage in a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  Under this standard, a pleading may not simply offer "labels and conclusions," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, which is to say that there must be "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S. Ct. at 1949.  Essentially, a plaintiff must provide "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element."  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted).  However, "the defendant bears the burden of showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

### A.   Background on the FMLA

As our Court of Appeals has noted, "Congress enacted the FMLA in 1993 to accommodate 'the important societal interest in assisting families, by establishing a minimum labor standard for leave,'" Sommer v. The Vanguard Group, 461 F.3d 397, 398-99 (3d Cir. 2006) (quoting S. Rep. No. 103-3 at 4, 1993 U.S.S.C.A.N. at 6-7).  The Act itself specifies that among its purposes are "to balance the demands of the workplace with the needs of families," "to entitle employees to take reasonable leave for medical reasons," and "to accomplish the purposes described [above] in a manner that accommodates the legitimate interests of employers."  29 U.S.C. § 2601(b)(1)-(3).  To bring about these ends, the FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for certain medical conditions, including "a serious health condition that makes the employee unable to perform the

11

functions of the position of such employee." § 2612(a)(1).  The

Act defines eligibility[2] in terms of the duration an employee has

worked for an employer and the number of hours such employee

worked for the employer during the previous year.  § 2611(2)(A).

As Judge Cercone noted in <u>Sinacole v. iGate Capital</u>,

2006 WL 3759744, at *5 (W.D. Pa. 2006) (citations omitted),

> The Act contains two relatively distinct
> types of provisions: a series of prescriptive
> substantive rights for eligible employees,
> often referred to as the 'entitlement' or
> 'interference' provisions which set floors
> for employer conduct; and protection against
> discrimination based on the exercise of these
> rights, often referred to as the
> 'discrimination' or 'retaliation' provisions.
> An employee may bring suit to enforce these
> rights pursuant to section 2617(a) of the
> Act.

Substantive rights under the FMLA are protected by 29 U.S.C. §

2615(a)(1), making it "unlawful for any employer to interfere

with, restrain, or deny the exercise of or the attempt to

exercise, any right provided under this subchapter."  29 C.F.R. §

825.220(b) elaborates that "[a]ny violations of the Act or of

these regulations constitute interfering with, restraining, or

---

[2] Hofferica alleges in her complaint that she is an
eligible employee under the FMLA, Pl.'s Compl. ¶ 10, and St. Mary
does not dispute this characterization in its motion to dismiss.

denying the exercise of rights provided by the Act."[3]  These
rights include not only the general entitlement to leave
described in § 2612(a)(1), but the right, "on return from such
leave -- (A) to be restored by the employer to the position of
employment held by the employee when the leave commenced; or (B)
to be restored to an equivalent position with equivalent
employment benefits, pay, and other terms and conditions of
employment."  § 2614(a)(1).  Regulations promulgated under the
Act also required -- as of the date of the violations alleged
here -- that employers provide employees with notice regarding
the FMLA's general provisions, 29 C.F.R. § 825.300 (2008),
eligibility for benefits, § 825.110(d) (2008), expectations and
obligations, § 825.301 (2008), and designation of leave as FMLA-
qualifying.  Section 825.208 (2008).[4]

_____

[3] The regulations applicable at the time Hofferica
requested FMLA leave in March of 2008 and when she began such
leave in September of that year were later amended, with the
amendments becoming effective on January 15, 2009.  We will apply
here the regulations in force at the time the violations alleged
by Hofferica occurred.  However, the quoted language from 29
C.F.R. § 825.220(c) remained unaltered by the January, 2009
amendments.

[4] As the <u>Federal Register</u> explains, the new regulations
"consolidate[d] the employer notice requirements, which appear in
current §§ 825.300, 825.301, 825.110 and 825.208, into one
comprehensive section addressing an employer's notice
(continued...)

As for retaliation, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).  Its regulations[5] explain that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. . . . [E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c) (2008).

B.   **Hofferica's Interference Claim**

Judge Simandle has explained that "[t]o prevail on an FMLA interference claim, the employee merely needs to show she

---

[4] (...continued)
obligations."  73 Fed. Reg. 67,990 (Nov. 17, 2008).  See also 29 C.F.R. 825.300 (2011).

    [5] As our Court of Appeals has explained, "claims that an employee has been discharged in retaliation for having taken an FMLA leave" straddle the interference/retaliation divide that some courts have taken as an organizing principle under FMLA. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146 n.9 (3d Cir. 2004).  Though some courts have held that such claims arise from 29 U.S.C. § 2615(a)(2), id. (collecting cases), the Ninth Circuit and our own Court of Appeals have concluded that "29 C.F.R. § 825.220(c) appears to be an implementation of the 'interference' provisions of the FMLA" set out in 29 U.S.C. § 2615(a)(1), even though "its text unambiguously speaks in terms of 'discrimination' and 'retaliation.'"  Id.

14

was entitled to benefits under the FMLA and that she was denied

them." Thurston v. Cherry Hill Triplex, 2008 U.S. Dist. LEXIS

60936, at *11 (D.N.J. 2008).  In her complaint, Hofferica claims

that she was denied three types of benefits under the FMLA:

reinstatement, individualized notice, and responses to her

reasonable inquiries.  As we have noted, in its motion to dismiss

St. Mary addresses only the first of these entitlements.

In her response to the motion to dismiss, Hofferica

asserts three arguments in defense of her interference claims:

that (1) she was entitled to reinstatement under the FMLA; (2) in

any case, St. Mary should be equitably estopped from claiming

that she exceeded her FMLA leave; and (3) she has successfully

stated an interference claim based on St. Mary's failure to

provide individualized notice.  In its reply, St. Mary contests

each of these arguments.

As we have already explained, we will consider the

sufficiency of Hofferica's FMLA reinstatement claim to have been

fully briefed, and will grant St. Mary's motion to dismiss as to

this claim.  While we will examine the adequacy of Hofferica's

notice interference claim and conclude at this time that she

appears not to have stated such a claim, we will delay a

definitive ruling on the sufficiency of this claim until

Hofferica has had one more opportunity to explain why it should not be dismissed.

### 1.   St. Mary's Failure To Reinstate Hofferica

Hofferica asserts that St. Mary violated the FMLA by "terminating Plaintiff's position and failing to maintain the Plaintiff's position upon Plaintiff's actual or ostensibly approved date for return from leave of absence and/or to provide Plaintiff a comparable position."  Pl.'s Compl. ¶ 29.  In its motion to dismiss, St. Mary asserts that "[w]hen the Medical Center terminated Hofferica's employment, her FMLA leave had expired over two (2) weeks before and she still had not returned, and she had not been medically cleared to return, to work." Def.'s Mem. at 8.  Since "the FMLA does not prohibit an employer from terminating an employee-on-leave who fails to return to work after her FMLA leave expires," id. at 2 (emphasis omitted), St. Mary urges that it "did not violate the FMLA." Id. at 8.  In response, Hofferica merely reiterates that "Plaintiff Hofferica embarked upon an FMLA leave in or about September of 2008 and was not reinstated to her position when she wished to return from FMLA leave.  This is sufficient to establish a valid FMLA interference claim."  Pl.'s Br. at 12 (citation omitted).

It is true that "[a]fter an eligible employee returns from an FMLA leave, the employee is entitled to be reinstated to his or her former position, or an equivalent one." <u>Conoshenti</u>, 364 F.3d at 141 (citing 29 U.S.C. § 2614(a)(1)).  However, "once an employee exceeds the duration of her protected leave, the employer is not obligated by FMLA to keep open the position or to reinstate the employee upon her return." <u>Keim v. Nat'l R.R. Passenger Corp.</u>, 2007 WL 2155656, at *6 (E.D. Pa. 2007) (Davis, J.).  Thus, "[a]n employer may not terminate an employee because he or she has taken the leave permitted by the statute.  If the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee." <u>Katekovich v. Team Rent a Car, Inc.</u>, 36 Fed. Appx. 688, 690 (3d Cir. 2002).

As we have already noted, "[t]o prevail on an FMLA interference claim, the employee merely needs to show she was entitled to benefits under the FMLA and that she was denied them." <u>Thurston</u>, 2008 U.S. Dist. LEXIS 60936, at *11.  Hofferica was not entitled to reinstatement, however, unless her FMLA leave had not yet expired -- and Hofferica does not allege in her complaint that she had such leave remaining.  Hofferica thus has not stated a claim for FMLA interference on the basis that St. Mary failed to reinstate her to her position.

17

### 2.   St. Mary's Individualized Notice To Hofferica

Because Hofferica's equitable estoppel argument -- by which she attempts to rescue her FMLA claim for reinstatement interference -- requires us to consider questions of notice and reliance that are naturally considered in the context of Hofferica's notice interference claim, we will turn next to this claim.

Hofferica alleges in her complaint that "[t]he actions of the Defendant, in (1) failing to sufficiently notify Plaintiff of her right to return to her position and/or a substantially similar position upon return from FMLA leave, [and] (2) failing to sufficiently inform the Plaintiff that she would lose her position if she did not return to work before February of 2009 . . . interfered with Plaintiff's rights under the FMLA."  Pl.'s Compl. ¶ 29.  In her response, Hofferica elaborates upon this notice interference claim, explaining that

> In its letter sent to the Plaintiff dated
> April 22, 2008, the Defendant failed to
> provide vital information, including but not
> limited to: an accurate description of the
> extent of her leave, whether she would be
> terminated if she did not return following
> her leave, the preconditions for returning to
> work, and whether she was required to furnish
> medical documentation prior to returning to
> work.

18

Pl.'s Br. at 11.  In its reply, St. Mary contends that "plaintiff fails to allege facts to plausibly suggest that she was prejudiced by her alleged lack of 'individualized notice,'" Def.'s Reply at 1 (capitalization omitted), and that "the Medical Center did provide Plaintiff the information she needed to make informed decisions with respect to FMLA leave."  Id. at 2 (emphasis omitted).  As we will explain, it appears to us that St. Mary has the better of this argument -- but we will give Hofferica an opportunity to brief us on why she believes this is not so.

At the time of the violations that Hofferica alleges, FMLA's implementing regulations required employers to provide employees with four types of notice: general, eligibility, rights and obligations, and designation.  Hofferica's claims concern only the latter two types of notice.

29 C.F.R. § 825.301 (2008) formerly provided that

> (b) (1)  [An FMLA-covered] employer shall . . . provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. . . . Such specific notice must include, as appropriate:
>
> (i)  that the leave will be counted against the employee's annual FMLA leave entitlement (see § 825.208);

19

(ii) any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so (see § 825.305);

(iii) the employee's right to substitute paid leave and whether the employer will require the substitution of paid leave, and the conditions related to any substitution;

(iv) any requirement for the employee to make any premium payments to maintain health benefits and the arrangements for making such payments (see § 825.210), and the possible consequences of failure to make such payments on a timely basis (i.e., the circumstances under which coverage may lapse);

(v) any requirement for the employee to present a fitness-for-duty certificate to be restored to employment (see § 825.310);

(vi) the employee's status as a 'key employee' and the potential consequence that restoration may be denied following FMLA leave, explaining the conditions required for such denial (see § 825.218);

(vii) the employee's right to restoration to the same or an equivalent job upon return from leave (see §§ 825.214 and 825.604); and

(viii) the employee's potential liability for payment of health insurance premiums paid by the employer during the employee's unpaid FMLA leave if the

employee fails to return to work after
taking FMLA leave (see § 825.213).

(2)   The specific notice may include other
information -- e.g., whether the employer
will require periodic reports of the
employee's status and intent to return to
work, but is not required to do so. . . .

Section 825.301 also required that

(c)   Except as provided in this subparagraph,[6] the
written notice required by paragraph (b) (and
by subparagraph (a)(2)[7] where applicable)
must be provided to the employee no less
often than the first time in each six-month
period that an employee gives notice of the
need for FMLA leave (if FMLA leave is taken
during the six-month period).  The notice
shall be given within a reasonable time after
notice of the need for leave is given by the
employee -- within one or two business days
if feasible.  If leave has already begun, the
notice should be mailed to the employee's
address of record.

---

[6] Section 825.301(c)(1) (2008) set out the notice
requirement "[i]f the specific information provided by the notice
changes with respect to a subsequent period of FMLA leave," while
§ 825.301(c)(2) (2008) explained the requirement "if the employer
is requiring medical certification or a 'fitness-for-duty'
report."  Neither circumstance is allegedly present here.

[7] Section 825.301(a)(2) (2008) required an employer
without "written policies, manuals, or handbooks describing
employee benefits and leave provisions" to "provide written
guidance to an employee concerning all the employee's rights and
obligations under the FMLA."  Hofferica does not allege St. Mary
was such an employer, so this provision is inapplicable here.

21

And § 825.208(a)(2008) stated that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section."

Based on these regulations, we identify four problems with Hofferica's claim concerning St. Mary's alleged failure to provide individualized notice. First, Hofferica has not alleged facts in her complaint to support some of the deficiencies with St. Mary's notice that she asserts, and supports other asserted deficiencies only with conclusory allegations. With respect to notice, Hofferica's complaint alleges concretely only that "[v]ia letter dated April 22, 2008, Defendant specifically informed Plaintiff that her leave request was 'approved from February 5, 2008 through February 4, 2009.'" Pl.'s Compl. ¶ 14. The complaint also alleges, conclusorily, that St. Mary violated the FMLA by "(1) failing to sufficiently notify Plaintiff of her right to return to her position and/or a substantially similar position upon return from FMLA leave, [and] (2) failing to sufficiently inform the Plaintiff that she would lose her position if she did not return to work before February of 2009." Id. ¶ 29. The complaint thus makes no mention of any failure to provide notice as to the extent of Hofferica's leave, any

22

preconditions for her return to work, and whether she was
required to furnish medical documentation prior to returning to
work.  Moreover, the complaint alleges no <u>concrete</u> facts
suggesting that St. Mary failed to notify Hofferica as to her
right to reinstatement and the consequences if she failed to
return to work before February of 2009.

   While we understand the difficulty a plaintiff may have
in alleging concrete facts that suggest a defendant did <u>not</u> do
something, in this context Hofferica could at least have
identified all the communications she allegedly received from St.
Mary pertaining to her leave, or even attached those
communications to her complaint.  Hofferica instead proffers
almost no detail as to those communications.  Based on her
allegations we can have little confidence that "discovery will
reveal evidence of the necessary element."  <u>Phillips</u>, 515 F.3d at
234 (quotation marks omitted).  We note, furthermore, that the
April 22, 2008 letter from St. Mary to Hofferica -- which St.
Mary attached to its motion to dismiss, and which we will
consider as a document "relied upon in the complaint," <u>In re</u>
<u>Burlington Coat Factory</u>, 114 F.3d at 1426 -- specifies that
"[f]or your reference as of today (April 22, 2008) you have <u>241</u>
<u>hours</u> of Family Medical Leave."  Ex. A to Def.'s Mem. (emphasis

23

in original).  This contradicts Hofferica's claim that St. Mary
failed to provide her with notice of the duration of her leave.

     Second, we have discovered no provision in the prior
regulations requiring that an employer notify an employee of the
duration of his or her unused FMLA leave, explain the conditions
under which the employee may return to his or her position, or
warn the employee that upon expiration of his or her FMLA leave
the employee loses the entitlement to be reinstated.  This
contrasts in part with the new regulations, under which an
"employer must notify the employee of the amount of leave counted
against the employee's FMLA leave entitlement."  29 C.F.R. §
825.300(d)(6) (2011).  See also 73 Fed. Reg. 67,998 (Nov. 17,
2008) ("The Department . . . has significantly modified the
process for designating FMLA leave to ensure that employees
receive timely notification both that leave for a particular
condition will be FMLA-protected and the number of hours that
will be counted against their FMLA leave entitlement.").

     As for St. Mary's alleged failure to explain whether
Hofferica "was required to furnish medical documentation prior to
returning to work," Pl.'s Br. at 11, the regulations at the time
provided only that an employer must notify an employee of "any
requirement for the employee to present a fitness-for-duty

24

certificate to be restored to employment." 29 C.F.R. §
825.301(b)(1)(v) (2008) (emphasis added). Since Hofferica has
not alleged that St. Mary imposed such a requirement, St. Mary
would not have violated the regulations by failing to point out
the absence of such a requirement to Hofferica.

Third, even if Hofferica concretely alleged in her
complaint that St. Mary failed to provide her with the specified
types of notice, and even if the prior regulations implementing
the FMLA required these types of notice, Hofferica has not
alleged facts that suggest St. Mary was obligated to provide
Hofferica with any notice at the time in question. As we have
already noted, the then-applicable set of regulations obliged
employers to provide employees with notice of expectations and
obligations "no less often than the first time in each six-month
period that an employee gives notice of the need for FMLA leave
(if FMLA leave is taken during the six-month period)." 29 C.F.R.
§ 825.301(c) (2008). Admittedly, this provision is less than
pellucid.[8] At the time this regulation was promulgated, the

---

[8] The new regulations offer greater clarity, explaining
that employers must "provide written notice detailing the
specific expectations and obligations of the employee and
explaining any consequences of a failure to meet these
obligations" only "each time the eligibility notice is provided
(continued...)

Federal Register explained that "[t]he regulation has been

amended to provide that in most circumstances notice need only be

given once in each six-month period, on the occasion of the first

employee notice of the need for leave."  60 Fed. Reg. 2,220 (Jan.

6, 1995).  Though neither the FMLA nor its regulations defined

"six-month period," 29 C.F.R. § 825.200(b) (2008) provided that

> An employer is permitted to choose any one of
> the following methods for determining the
> "12-month period" in which the 12 weeks of
> leave entitlement occurs:
>
> (1)  The calendar year;
>
> (2)  Any fixed 12-month "leave year," such as
>      a fiscal year, a year required by State
>      law, or a year starting on an employee's
>      "anniversary" date;
>
> (3)  The 12-month period measured forward
>      from the date any employee's first FMLA
>      leave begins; or

---

[8] (...continued)
pursuant to paragraph (b) of this section."  § 825.300(c)(1)
(2011).  Paragraph (b) provides that "[w]hen an employee requests
FMLA leave, or when the employer acquires knowledge than an
employee's leave may be for an FMLA-qualifying reason, the
employer must notify the employee of the employee's eligibility
to take FMLA leave within five business days, absent extenuating
circumstances," but adds "[i]f, at the time an employee provides
notice of a subsequent need for FMLA leave during the applicable
12-month period due to a different FMLA-qualifying reason, and
the employee's eligibility status has not changed, no additional
eligibility notice is required."  § 825.300(b)(1), (3) (2011).

> (4)  A "rolling" 12-month period measured
>      backward from the date an employee uses
>      any FMLA leave (except that such measure
>      may not extend back before August 5,
>      1993).

Section 825.200(e) (2008) further provided that "[i]f an employer

fails to select one of the options in paragraph (b) of this

section for measuring the 12-month period, the option that

provides the most beneficial outcome for the employee will be

used."  We can thus deduce that the "6-month periods" referred to

in § 825.301(c) are those that result when the "12-month period"

described in § 825.200(b) is divided in half.

To state a claim for interference against St. Mary

based on its failure to provide individualized notice under §

825.301(c) (2008), Hofferica thus needed to allege three facts:

(1) St. Mary either chose one of the methods described in §

825.200(b) for calculating twelve-month periods -- and hence a

method for calculating six-month periods -- or failed to make

such a choice, so that § 825.200(e) determined the method used;

(2) Hofferica took FMLA leave within the applicable six-month

period in which she gave notice of her need for FMLA leave; and

(3) Hofferica had not already given notice of her need for leave

earlier in the same period and received notice from St. Mary.

Hofferica alleges none of these facts in her complaint.

27

Finally, even if we were to accept that St. Mary failed to provide the individualized notice the FMLA required, Hofferica has not alleged that she was prejudiced by this failure. It is well-settled in this Circuit that a plaintiff may only "show an interference with his right to leave under the FMLA, within the meaning of 29 U.S.C. § 2615(a)(1), if he is able to establish that this failure to advise [of his rights under the FMLA] rendered him unable to exercise that right in a meaningful way, thereby causing injury." Conoshenti, 364 F.3d at 143; see also Fogleman v. Greater Hazleton Health Alliance, 122 Fed. Appx. 581, 587 (3d Cir. 2004) ("Conoshenti held that an employer's failure to advise could constitute a violation of one's FMLA rights, but only if the employee could show resulting prejudice."). As Judge Simandle explained in Thurston, 2008 U.S. Dist. LEXIS 60936, at *21, "if [an] employer actually violates the FMLA's individualized notice provisions by failing to inform [an] employee about the right[s] and obligations associated with FMLA leave, it is not an automatic bar to the employee's ability to bring a valid interference claim if the employee exceeds the twelve weeks of leave protected under the FMLA." Under such circumstances, the employee must "show prejudice . . . [by] demonstrat[ing] that, had she been advised of her FMLA rights,

she could have returned to work after the twelve-week leave."
Fogleman, 122 Fed. Appx. at 587.  Moreover, because "the FMLA
does not require an employer to provide a reasonable
accommodation to an employee to facilitate his return to the same
or equivalent position at the conclusion of his medical leave,"
Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002)
(quotation marks omitted), then "part of Plaintiff's proof is
that Plaintiff was able to perform the essential functions of his
job at the expiration of his leave."  Conti v. CSX Int'l, 2003 WL
1063960, at *2 (E.D. Pa. 2003) (Baylson, J.).

Because Hofferica has not alleged that she could have
performed the functions of her position at the time her FMLA
leave expired, she has therefore not suggested in her complaint
that any failure by St. Mary to provide her with notice
prejudiced her by preventing her from exercising her right to
reinstatement.  She has also not alleged that her ability to
exercise her rights under the FMLA was impaired in any other way
by lack of notice.

It thus appears to us that Hofferica has failed to
state a claim for FMLA interference based on St. Mary's alleged
failure to provide notice.  We will give Hofferica leave,
however, to explain why her notice interference claim is actually

sufficient before determining whether we will dismiss Count II to
the extent that it asserts such a claim.

### 3.   **Equitable Estoppel and St. Mary's Notice**

Finally, in an effort to rescue her interference claim
based on St. Mary's failure to reinstate her, Hofferica explains
that "[e]ven if the Court finds that Plaintiff Hofferica exceeded
her protected leave and is therefore not entitled to
reinstatement the Defendant's motion must be denied on the basis
of equitable estoppel," since "the Defendant made a false
representation to Plaintiff Hofferica regarding the extent of her
leave."  Pl.'s Br. at 12.  In response, St. Mary suggests that
"the Amended Complaint does not allege facts to plausibly suggest
that Plaintiff relied to her detriment on the alleged
misrepresentation," Def.'s Reply at 5-6, and that "any alleged
reliance could not possibly be 'reasonable,' because the April 22
letter specifically references that she has a finite number of
FMLA hours remaining."  Id. at 6.

As our Court of Appeals has explained, "[i]n order to
succeed on a claim of equitable estoppel, [plaintiff] had to
prove that she detrimentally relied on representations made by
her supervisors and that these representations caused her not to

return to work." Baker v. Hunter Douglas, 270 Fed. Appx. 159,

164 (3d Cir. 2008).  Though Hofferica suggests that in the April

22, 2008 letter from St. Mary to Hofferica, "the Defendant

informed her that she was preapproved for FMLA leave until

February of 2009," Pl.'s Br. at 12, we have already noted that

this letter also explained that "[f]or your reference as of today

(April 22, 2008) you have 241 hours of Family Medical Leave."

Ex. A to Def.'s Mem. (emphasis in original).

Under similar circumstances,[9] the Court of Appeals for

the Eighth Circuit concluded that a "letter to [the plaintiff]

did not explicitly guarantee him a specific amount of leave or

leave until a specific date but instead assured him twelve weeks

of FMLA leave," so that there was no misrepresentation and the

equitable estoppel doctrine did not apply.  Slentz, 448 F.3d at

1011. We similarly conclude that the language in St. Mary's

letter to Hofferica can only reasonably be interpreted to suggest

that while she could take leave at any time between February 5,

---

[9] In Slentz v. City of Republic, 448 F.3d 1008 (8th
Cir. 2006), a letter from a defendant employer to a plaintiff
employee stated that "Family Medical Leave will begin on January
30, 2003, and is expected to continue until you are released from
your doctor's care.  Except as explained below, you have a right
under the FMLA for up to twelve weeks of unpaid leave in a twelve
month period."  Id. at 1011.

2008 and February 4, 2009, she had only 241 hours of such leave remaining under the FMLA.  Because the letter did not represent that Hofferica had more than 241 hours of FMLA leave available, Hofferica could not have reasonably relied on such letter to take more than this specific leave time.

Hofferica's equitable estoppel claim also founders on the second prong of Baker, under which Hofferica must show that St. Mary's representations _caused_ her not to return to work. Rescuing an FMLA reinstatement interference claim by means of an equitable estoppel theory requires similar factual allegations as those needed to state an FMLA notice interference claim.  In both situations, the plaintiff must allege concrete facts that, if proven, would demonstrate that but for the misrepresentation or lack of notice she would have been able to return to work before the expiration of her FMLA leave.  As already noted, Hofferica has not alleged that she could perform her duties at the time her FMLA leave expired, and has thus not claimed that St. Mary's representations _caused_ her not to return to her nursing position. We will thus reject her estoppel argument and dismiss Count II of her complaint to the extent that it asserts a claim for interference based on a failure to reinstate.

C.    **The Sufficiency of Hofferica's Retaliation Claim**

In her complaint, Hofferica asserts that "[t]he actions of the Defendant as set forth herein, including, inter alia, terminating Plaintiff's position of employment, was retaliatory and in retribution for Plaintiff's legitimate exercise of her rights under the FMLA."  Pl.'s Compl. ¶ 33.  Hofferica then further explains in her response that

> [T]he Plaintiff has sufficiently pleaded
> facts supporting that the adverse decision,
> her termination, was causally related to her
> leave. . . . [T]he Plaintiff's termination
> letter, is itself suggestive that her FMLA
> leave was the cause for her termination.  In
> the letter Defendant specifically mentions
> Plaintiff Hofferica's leave. . . .
> Additionally, the Plaintiff has pleaded
> sufficient facts to establish causation
> through: temporal proximity and ongoing
> antagonism.

Pl.'s Br. at 8.  St. Mary replies to Hofferica's argument as to its letter by noting that "[i]n order to provide Plaintiff an explanation of the basis for her termination, the Medical Center necessarily had to reference her FMLA leave and the fact that her twelve weeks of leave had expired."  Def.'s Reply at 10.  St. Mary further explains that "temporal proximity cannot logically create an inference of retaliatory intent with respect to a discharge following expiration of FMLA leave," id. at 10-11, and

33

that Hofferica's factual allegations "do not plausibly allege an
ongoing 'pattern of antagonism' sufficient to create an inference
of FMLA retaliatory intent." Id. at 12. After examining the
complaint we conclude that while neither the termination letter
nor the alleged temporal proximity supports Hofferica's
retaliation claim, she has alleged sufficient antagonism for her
retaliation claim to survive a motion to dismiss.[10]

     The FMLA's implementing regulations provide -- and did
so at the time of the violations alleged here -- that "employers
cannot use the taking of FMLA leave as a negative factor in
employment actions, such as hiring, promotions or disciplinary
actions." 29 C.F.R. § 825.220. As Judge Davis has explained,
"[o]ne may proceed on a FMLA retaliation claim under either the
Price Waterhouse or McDonnell Douglas legal frameworks." Keim,
2007 WL 2155656, at *5. Under the Price Waterhouse framework,
"when an FMLA plaintiff alleging unlawful termination presents
direct evidence that his FMLA leave was a substantial factor in
the decision to fire him, the burden of persuasion on the issue

---

     [10] We recall that though St. Mary's motion to dismiss
did not itself address Hofferica's retaliation claim, Hofferica
herself elaborated upon the sufficiency of this claim in her
response, leading St. Mary to attack this claim in its reply. In
the interests of thoroughness, we thus treat this claim as though
it was fully briefed in the ordinary course.

of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered the FMLA leave." Conoshenti, 364 F.3d at 147 (internal quotation marks and brackets omitted).  In contrast, the McDonnell Douglas analysis involves three well-trod steps:

> First, the plaintiff must present sufficient evidence to establish a prima facie case of retaliation.  To do so, the plaintiff must show: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. . . . Once the plaintiff has proved a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. . . . Finally, if the employer's evidence creates a genuine issue of fact, then the presumption of discrimination drops from the case and the burden shifts back to the plaintiff, who must then show that the employer's stated reason was in fact a pretext for retaliating against her because she took protected FMLA leave.

Thurston, 2008 U.S. Dist. LEXIS 60936, at *29-30 (internal quotation marks, citations, and brackets omitted).  Under either framework, then, the initial burden rests on the plaintiff to provide either direct evidence of causation or evidence that establishes a prima facie case of retaliation.

35

Hofferica attempts to allege causation in three ways: first, that St. Mary's November 7, 2008 letter terminating her position provides direct evidence of causation; second, that temporal proximity between her leave-taking and termination provides indirect evidence of causation; and third, that a pattern of antagonism provides such indirect evidence.  Pl.'s Br. at 8.

We may begin by rejecting the proposition that St. Mary's letter provides direct evidence of retaliatory causation. As our Court of Appeals has explained, to constitute direct evidence, "the evidence must be such that it demonstrates that the 'decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'"  Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989)).  The letter on which Hofferica relies to show direct causation, however, states merely that: "Please be advised that your Family and Medical Leave of Absence has expired and we are unable to hold your position with St. Mary Medical Center."  Ex. C to Def.'s Mem.  Far from adverting to an illegitimate ground on which Hofferica was discharged, the letter refers only to a legitimate ground: Hofferica's failure to return to her position

36

following the expiration of her FMLA leave.  The November 7, 2008 letter does not provide direct evidence of causation.

In contrast, the second and third routes to causation that Hofferica plots are both indirect.  It is certainly true that "[a] causal link between protected activity and adverse action may be inferred from an unusually suggestive temporal proximity between the two." Peace-Wickham v. Walls, 409 Fed. Appx. 512, 522 (3d Cir. 2010).  But while Hofferica would have us believe that the timing of her termination suggests that it was motivated by her taking of leave under the FMLA, "[p]laintiff's argument confuses her act of taking leave with her failure to return to work after her leave period had ended." Castellani v. Bucks County Municipality, 2008 WL 3984064, at *7 (E.D. Pa. 2008) (DuBois, J.).  In reality, it appears far more plausible, from Hofferica's allegations as to the chronology of events, that her termination resulted from the expiration of her leave and her failure to return to work, not her taking of leave.  After all, Hofferica alleges that she began taking FMLA leave in September of 2008, Pl.'s Compl. ¶ 17, and that St. Mary did not terminate her until November 12, 2008.  Id. ¶ 22.  The November 7, 2008 letter from St. Mary suggests that Hofferica's FMLA leave expired shortly before her termination.  See Ex. C to Def.'s Mem.  The

natural inference to draw from Hofferica's allegations, then, is that it was the expiration of leave, and not her taking of leave, that motivated her termination.

Finally, we come to the "ongoing antagonism" that Hofferica identifies in the allegations of her complaint.  Pl.'s Br. at 8.  Our Court of Appeals has explained that a causal link between protected activity and adverse action may be inferred from "an intervening pattern of antagonism following the protected conduct." Peace-Wickham, 409 Fed. Appx. at 522. Hofferica's complaint alleges that St. Mary displayed antagonism toward her in two ways.  First, shortly after Hofferica applied for leave under the FMLA, "Charles Kunkle . . . Emergency Room Director, stated to the Plaintiff that he 'questioned [the Plaintiff's] ability to do [her] job' because of her disability." Pl.'s Compl. ¶ 15 (brackets in original).  Because this alleged antagonism was explicitly linked by its source to Hofferica's disability, not her taking of FMLA leave, and since in any case these comments pre-dated Hofferica's taking of leave under the FMLA, we find it implausible that such a statement could demonstrate an indirect causal link between Hofferica's leave-taking and her termination.

Second, Hofferica alleges that the assistant nurse manager at St. Mary refused to return weekly calls from Hofferica and her husband pertaining to her leave.  Pl.'s Compl. ¶¶ 18-21. While an employer's failure to return an employee's phone calls does not constitute overt antagonism, it certainly suggests an antagonistic attitude toward the employee, particularly where -- as here -- such refusal began after the employee initiated FMLA leave, and continued despite regular communications from the employee.  Bearing in mind that when analyzing whether a plaintiff has established causation in a retaliation case, a court should ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference" of causation, Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (quotation marks omitted), we conclude that if Hofferica can prove her allegations as to St. Mary's refusal to return her calls while she was on leave, a reasonable factfinder could conclude that this refusal demonstrates sufficient antagonism to establish a prima facie case for retaliation under McDonnell Douglas.  Hofferica has thus stated a claim for FMLA retaliation.

BY THE COURT:

__\s\Stewart Dalzell

39